# In the United States Court of Federal Claims

No. 99-031 V
(Filed Under Seal: March 29, 2007)
(Reissued: April 12, 2007)[1]

_____

**GAIL DEVONSHIRE,**

                *Petitioner,*

**v.**

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,**

                *Respondent.*

Vaccine Act; Tetanus; Brachial Neuritis; Cervical Radiculopathy

_____

*Clifford J. Shoemaker, Esq.*, Shoemaker and Associates, Vienna, Virginia, for petitioner.

*Michael P. Milmoe, Esq.*, United States Department of Justice, Washington, D.C., for respondent.

## OPINION AND ORDER

**Block,** *Judge*.

### I. Introduction

The case before the Court is a review of the Special Master's decision dismissing petitioner's request for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1 to -34 ("Vaccine Act"). *Devonshire v. Sec'y of the Dep't of Health and Human Servs.*, No. 99-031V, 2006 WL 2970418, (Sp. Mstr. Fed. Cl. Sept. 28, 2006). Specifically, petitioner alleges that as a result of a tetanus vaccination, she developed brachial neuritis which ultimately caused or aggravated a degenerative cervical disk condition. *Id*. After a hearing held October 15, 2005, the Special Master concluded that the petitioner failed to prove that she suffered brachial neuritis and dismissed her petition.

---

[1] This opinion originally was issued under seal on March 29, 2007. The court afforded the parties an opportunity to propose redactions in the opinion prior to its publication, but no such redactions were proposed. Accordingly, the opinion is herein reissued for publication, unsealed.

Upon review of the Special Master's opinion and the entire record, the Court concludes that the Special Master correctly determined that as a factual matter, petitioner failed to prove that she suffered brachial neuritis, and affirms the Special Master's decision.

## II. Discussion

Pursuant to 42 U.S.C. § 300aa-12(e), this Court has the authority to (a) uphold the findings of fact and conclusions of law of the special master and sustain the decision; (b) set aside any finding of fact or conclusion of law that is arbitrary, capricious, or an abuse of discretion; or (c) remand the petition to the special master for further action. The Court must give great deference to the special master's findings of fact and will disturb his decision only if it is arbitrary and capricious. *See Saunders v. Sec'y of the Dep't of Health and Human Servs.*, 25 F.3d 1031, 1033 (Fed. Cir. 1994). "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines v. Sec'y of the Dep't of Health and Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991).

The Vaccine Act program was created in large part to preempt tort litigation against vaccine manufacturers and provide compensation to injured individuals without requiring the rigorous burdens of proof associated with products liability litigation, including causation, negligence, and product defectiveness. *See generally Stevens v. Sec'y of the Dep't of Health and Human Servs.*, No. 99-594V, 2001 WL 387418 at *6 (Sp. Mstr. Fed. Cl. Mar. 30, 2001). A petitioner under the Act may establish causation by relying on the "Vaccine Injury Table." *See* 42 U.S.C. § 300aa-14(a). If a petitioner's injury is "on-Table" and the petitioner shows that the onset or "significant aggravation" of predicate injuries occurred within a statutorily-prescribed period of time, then the Act establishes a presumption that the vaccine caused the injury. *See* § 300aa-11(c)(1)(C)(I); *Bunting v. Sec'y of the Dep't of Health and Human Servs.*, 931 F.2d 867, 872 (Fed. Cir. 1991). For off-Table injuries such as the one claimed here, it is axiomatic that as a prerequisite to proving causation, a petitioner must prove by a preponderance of the evidence the existence of the injury she claims was caused by the vaccination. *See Grant v. Sec'y of the Dep't of Health and Human Servs.*, 956 F.2d 1144 (Fed. Cir. 1992). The Vaccine Act makes clear that a special master cannot grant a claim that is "unsubstantiated by medical records or by medical opinion." 42 U.S.C. §§ 300aa-13.

Nevertheless, the issue here is not one of involving the complexities of causation – how to establish as a matter of law a cogent, verifiable nexus between the disease and the administration of the vaccine. Instead, it is the very existence of the malady of which petitioner complains that is at issue. Without such a showing, causation becomes a moot point. To be sure, the crux of petitioner's claim is that, without previously experiencing any neck or back problems, she suffered brachial neuritis shortly after receiving a vaccination containing tetanus toxoid, and that injury caused (or exacerbated an underlying) cervical spine disease thereby resulting in cervical radiculopathy. *Devonshire*, No. 99-031V, 2006 WL 2970418 * 15. Yet the Special Master ultimately concluded "Petitioner has not proved that she suffered a brachial neuritis, a claim upon which her petition must rise or fall." *Id.* at *19.

In his decision, Special Master Abell meticulously described the relevant evidence and facts, which the Court need not recite in full. *Id.* at *1-13. The Special Master thoroughly evaluated the petitioner's medical records as well as the medical opinions of several physicians. Based on all the

evidence, the Special Master was unable to find any "objective medical or scientific proof that a brachial neuritis occurred." *Id*. at *18.

An electromyography test ("EMG") conducted four months after the vaccination, a type of test which petitioner's own expert stated could "unambiguously establish the diagnosis of brachial neuritis," showed no evidence of brachial neuritis. *Id*. at *18. Also, while the medical records reflect that brachial neuritis *was considered* by the petitioner's treating physicians, "one by one they either downgrade[d] it [as] a possibility, excluded it entirely, or believe[d] her condition to have been more likely caused by something else." *Id*. at *19. Ultimately, even petitioner's own expert was reluctant to definitively diagnose petitioner with brachial neuritis, instead relying on "*post hoc ergo propter hoc*" reasoning that the Special Master rejected. *Id*. at *20. The Special Master ultimately concluded that there was "a paucity of evidence from which [the] Court [could] conclude that Petitioner suffered a brachial neuritis following administration of the tetanus vaccination." *Id*. Special Master Abell amply supported his conclusion, stating:

> Based on the entirety of the records and evidence filed in this case, this Court is loathe to superimpose a diagnosis of brachial neuritis *sue sponte*. A myriad of tests have been performed and a number of doctors consulted [including] several neurologists and neurosurgeons, and none of them, none of her treating physicians, ever reached this final conclusion. There is evidence that many doctors considered a brachial neuritis. But after ordering tests and on more careful observation, they could not confirm that diagnosis; and, in fact, most of them made statements *per contra*. Dr. Tornatore [petitioner's testifying expert], himself appeared reluctant to come to this conclusion until there had been additional medical tests. Those tests were not supportive of Dr. Tornatore's intent, but nevertheless he opined that is was still possible that an *atypical* case of brachial neuritis had occurred.

*Id.* at *18.

The Special Master found, and this Court agrees, that petitioner failed to prove that she actually suffered from brachial neuritis. The Special Master's decision was predicated on his findings of fact; he undoubtedly considered all the relevant evidence and articulated a rational basis for his decision. Accordingly, this Court cannot disturb his decision. *See Hines*, 940 F.2d at 1528.

### III. Conclusion

In the instant matter, the Special Master concluded that petitioner did not support her claim with sufficient evidence to prove she suffered the injury of which she complained. The Special Master judiciously and appropriately declined to provide petitioner with a diagnosis the medical profession declined to find, and as such, the Court AFFIRMS the Special Master's decision and dismisses the petition with prejudice.

**IT IS SO ORDERED**.

*s/Lawrence J. Block*
**Lawrence J. Block**
**Judge**